UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| ZACHARY HERRELL, <br> **Plaintiff**, <br><br> V. <br><br> MICHAEL T. BENSON, *in his official capacity as President of Eastern Kentucky University*, and JOSLYN GLOVER, *in her official capacity as Title IX Coordinator of Eastern Kentucky University*, <br><br> **Defendants.** | CIVIL ACTION NO. 5:16-cv-155-KKC <br><br><br> **MEMORANDUM OPINION & ORDER** |

\*\*\* \*\*\* \*\*\*

Eastern Kentucky University expelled Zachary Herrell after its Office of Equity and Inclusion determined that Herrell committed sexual misconduct in violation of the University's Non-Discrimination and Harassment Policy. Herrell did not participate in the investigation or the sanctioning phase of the proceedings. Herrell now seeks to enjoin the University's sanctions hearing and to compel defendant President Michael T. Benson, the president of the University, to make a recommendation to the EKU Board of Regents to issue to Herrell his degree, which EKU has not conferred as a result of his expulsion. This refusal, in Herrell's view, violates his due process rights under the Fourteenth Amendment. The defendants, President Benson and Joslyn Glover, EKU's Title IX Coordinator, have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Herrell's complaint. Because Herrell's first claim is moot and the second claim fails as a matter of law, Herrell's complaint will be dismissed and the defendants' motion to dismiss (DE 6) will be granted.

1

# I. BACKGROUND

In August 2010, Zachary Herrell enrolled as a freshman at Eastern Kentucky University, a public institution in Richmond, Kentucky. (Am. Compl. ¶ 5). On April 20, 2015, shortly before he was set to graduate with a Bachelor of Business Administration in Marketing degree, Herrell was accused of having non-consensual sexual intercourse with another student at an off-campus student housing complex. (Am. Compl. ¶¶ 7–8). Law enforcement arrested and charged Herrell with rape and attempted sodomy the same day. (Am. Compl. ¶ 11). On June, 12 2015, a Madison County grand jury indicted Herrell on rape and sodomy charges. (Am. Compl. ¶ 13).

EKU instituted its own investigation of the incident after the University received a complaint from the student with whom Herrell had allegedly had non-consensual sexual intercourse. The student accused Herrell of violating the University's Non-Discrimination and Harassment Policy, and EKU's Office of Equity and Inclusion (OEI) launched an investigation in order to determine whether Herrell committed sexual misconduct in violation of the Policy. Herrell was notified of the OEI investigation, but chose not to participate in the investigative process over a concern that "any participation in the [University] investigation would lead to the violation of his [Fifth Amendment rights]" in a pending criminal investigation. (Am. Compl. ¶¶ 13 –14). The OEI investigation continued despite Herrell's nonparticipation.

After a two-month investigation, the OEI found Herrell to have violated the sexual misconduct provision of the University's Non-Discrimination and Harassment Policy and issued an Investigative Reporting finding. EKU notified Herrell of the finding on June 25, 2015, and, as the Policy required, gave Herrell with ten days in which to provide the OEI with any additional information before EKU officially closed the investigation. Herrell did not provide any information to the OEI. The finding of a violation became final and non-

appealable after the ten-day window expired. EKU then notified Herrell on July 10, 2015, that a sanctions hearing would be held on July 27, 2015, to determine Herrell's standing as a student at EKU. Herrell again refused to participate, citing concerns over his rights against self-incrimination. (Am. Compl. 14).

In an attempt to delay the sanctions hearing while he litigated his pending criminal charges, Herrell filed a complaint against EKU, along with a motion seeking to stay the Sanctions Hearing, on June 21, 2015, in Madison County Circuit Court. EKU postponed the Sanctions Hearing in light of the motion, but the state court did not set the motion for a hearing or otherwise rule on it. EKU then filed a motion to dismiss the state court action, to which Herrell responded with a motion to amend his complaint to add Michael Benson, EKU's President, and Joslyn Glover, EKU's Title IX Coordinator—both in their official capacities—to the suit. All parties tendered an agreed motion to the state court to allow Herrell to pursue injunctive relief to (1) stay the sanctions hearing and (2) compel President Benson to make a recommendation to the EKU Board of Regents so as to require the Board of Regents to issue to Herrell his degree, which EKU had refused to confer due to the OEI investigation. The state court did *not* enter the agreed order or take any other action on the case.

Having previously postponed the sanction hearing and seeing no action from the state court, EKU decided to move forward with the disciplinary process and notified Herrell that a sanction hearing would be held on September 30, 2015, at 3:30 p.m. Herrell again attempted to stop the sanctions hearing. On September 28, 2015, two days before the hearing, Herrell filed a proposed order on his previously pending *ex parte* motion for injunctive relief in state court. Once again, the state court never scheduled the matter for a hearing and it never entered an order to stay the sanctions hearing.

The Equity Complaint Council convened on September 30, 2015, without Herrell in attendance. The Council expelled Herrell from EKU, evicted him from University housing, and permanently barred him from EKU's campus. Herrell did not appeal the sanctions decision of the Equity Complaint Council. Although Herrell has completed all of the academic requirements to obtain his degree, the University has not awarded a degree to him. (Am. Compl. ¶ 6).

After laying dormant for more than seven months, the agreed order proposed by Herrell and EKU was entered by Madison County Circuit Court on May 5, 2016. The order (1) dismissed EKU from the suit; (2) dismissed Herrell's state law claims and request for monetary relief; and (3) allowed Herrell to amend his complaint to include Glover and Dr. Benson in their official capacities as plaintiffs in his claims for injunctive relief under federal law. On May 23, 2016, Dr. Benson and Glover removed the matter to federal court and now seek to dismiss Herrell's amended complaint.

## II. DISCUSSION

The defendants' motion is governed by Rule 12(b)(6). That rule provides courts with a mechanism to enforce Rule 8, which governs the sufficiency of a complaint. In determining whether a plaintiff's complaint can withstand a motion to dismiss, the Court will assume the veracity of well-pleaded factual allegations and then determine whether they plausibly give rise to an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). As amended, Herrell's complaint asserts two claims: (1) a "request[] that the Defendant[s]' Disciplinary Process be stayed and held in abeyance until such time that the criminal charges are complete" so as to prevent a "potential violation of his right to self-incrimination during the process"; and (2) that the Defendants be enjoined from denying him his diploma in which he has a protected property interest under the Due Process Clause of the Fourteenth

4

Amendment. Rule 12(b)(6) fells both claims because they are claims upon which no relief can be granted.

### A.

The Court cannot grant the relief Herrell requests in Count I because the issue was moot before the case was removed to federal court.

"It has long been settled that a federal court has no authority to 'give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology*, 506 U.S. at 12 (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). To opine on the disciplinary process's alleged constitutional infirmities as they relate to the relief sought in Count I, but to nevertheless be unable to provide the remedy Herrell seeks, would convert any ruling on the merits into a purely advisory opinion. This is something the Court cannot do. Accordingly, insofar as Herrell requests injunctive relief to stop EKU's disciplinary process, that request is moot.

### B.

Count II of the Amended Complaint seeks a permanent injunction compelling Dr. Benson, the President of EKU, to recommend that the EKU Board of Regents confer upon Herrell a degree of Bachelor of Business Administration in Marketing, which Herrell argues is rightfully his. Herrell contends that this failure to confer his degree violates his due process rights. (DE 10, at 4) ("The second issue is the failure of Eastern Kentucky University to confer his earned degree without providing any process for what ever [sic] on the issue.").

In general, the standard for granting a permanent injunction is "essentially the same" as that for a preliminary injunction, except that a plaintiff must demonstrate actual success on the merits rather than likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987). A plaintiff seeking a permanent injunction must demonstrate that he or she has suffered irreparable injury, there is no adequate remedy at law, "that,

considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and that it is in the public's interest to issue the injunction. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Herrell cannot, however, demonstrate that his constitutional right to due process of law has been violated, and he does not state a claim upon which relief can be granted. Therefore, his request for a permanent injunction must be denied.

Herrell proceeds under the theory that EKU violated his procedural due process rights when it refused to confer his degree.[1] Determining whether the defendants violated Herrell's due process rights requires a two-step inquiry. The Court must first determine whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment. *Puckett v. Lexington–Fayette Urban County Gov't*, 833 F.3d 590, 604–05 (6th Cir. 2016) (citations omitted). "Only after identifying such a right will a court consider whether the deprivation of that interest contravened the notions of due process" under the Fourteenth Amendment." *Id*. (quoting *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (2001)).

Property interests themselves are not created by the Constitution. *Id*. at 605. Instead, they "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Ziss Bros. Constr. Co., v. City of Independence*, 439 F. App'x 467, 471 (6th Cir. 2011).

---

[1] The defendants' motion to dismiss addresses both substantive due process and procedural due process, likely because it is unclear from the complaint upon which due process theory Herrell proceeds. In Herrell's response, all of his arguments sound in procedural due process, save for a fleeting reference to *Crook v. Baker*, 813 F.3d 88 (6th Cir. 1987), followed by a reference to that fact that "[t]he same analysis can be used in the Plaintiff's case." (DE 10, at 9). The Court need not address such an underdeveloped argument. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.").

The defendants argue that Herrell has not identified any property interest in a college degree that is protected by the Due Process Clause. Indeed, "[t]he issue of whether a student's interest in continued enrollment at a post-secondary institution is protected has not been resolved." *McGee v. Schoolcraft Community College*, 167 F. App'x 429, 437 (6th Cir. 2006). However, the Sixth Circuit has plainly held "that the Due Process Clause is implicated by higher education disciplinary decisions." *Flaim v. Med. College of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005); *see also Doe v. Cummins*, 662 F. App'x 437, 445 (6th Cir. 2016) ("We have recognized that these [due process] protections apply to higher education disciplinary decisions."). While there may be room for debate, "[c]ourts have avoided this issue where possible by assuming for the sake of argument that such an interest exists." *McGee*, 167 F. App'x 429, 437. That practice is well-suited here. Therefore, for the purposes of this analysis, Herrell's interest in preserving his right to his degree against the claimed violations of EKU's sexual misconduct policy qualifies for procedural due process protection.

Still, the next question remains: what process is due? *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). At its core, procedural due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (internal quotations and citations omitted). In disciplinary expulsion cases, "[t]he hearing, whether formal, or informal, live or not, must be meaningful and must provide the accused with the opportunity to respond, explain, and defend." *Flaim*, 418 F.3d at 635-37 (quotations and citations omitted).

In his response to the defendants' motion to dismiss, Herrell claims he was deprived of due process in two ways. First, he claims that "because he could not participate in the disciplinary proceedings due to his criminal indictment, he was denied due process." (DE 10,

7

at 4). Second, Herrell argues that EKU offered him no recourse to challenge the University's decision to withhold his degree, which, he contends, creates a separate due process violation.

In examining these arguments, a more foundational issue becomes apparent. Herrell did not participate in any aspect of the disciplinary process, including the sanctions hearing, and did not exercise his right to appeal the sanctions imposed against him. By failing to participate in the process afforded to him by EKU, Herrell has waived any constitutional challenge to the process that resulted in his expulsion and the non-conferment of his degree. *E.g.*, *United States v. Doxey*, 833 F.3d 692, 702 (6th Cir. 2016) ("[W]aiver is the intentional relinquishment or abandonment of a known right."); *Conn v. Deskins*, ___ F. Supp. 3d ___, 2017 WL 1712532, at *6 (E.D. Ky. March 1, 2017) (finding that a plaintiff waived a procedural due process claim after not participating in post-termination process). This alone ends this case.

After a two-month investigation, EKU's OEI issued an Investigative Report finding Herrell to have violated the sexual misconduct policy. EKU notified Herrell of the findings and provided him with ten days to provide the OEI with additional information. Herrell did not provide any information or appeal within the ten-day window. The violation then became final and non-appealable. After a month's delay—to accommodate Herrell's efforts in state court—EKU conducted the sanctions hearing on September 30, 2015. Herrell did not show up, nor did he appeal the sanctions decision as was allowed. None of this is disputed. Instead, Herrell argues is that "he could not participate in the disciplinary process" because of his pending criminal case. (DE 10, at 4). Herrell could have participated, but elected against it. Such a tactical decision may have had its benefits, but the decision to forego the disciplinary proceedings dooms Herrell's constitutional challenge here.

EKU delayed the sanctions hearing for over a month in light of Herrell's legal attempt to stop it. Procedural due process claims do not focus on the end result or the egregiousness

8

of the deprivation itself, but only on whether the proceedings deprived a party of constitutionally sufficient process. *See Howard v. Grinage*, 82 F.3d 1343, 1350 (6th Cir. 1996). Herrell was afforded due process, but waived his right to it by refusing to participate in the process offered to him. *See Farhat v. Jopke*, 370 F.3d 580, 596–97 (6th Cir. 2004); *Leary v. Daeschner*, 228 F.3d 729, 744 (6th Cir. 2000); *see also Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) ("A party cannot create a due process claim by ignoring established procedures.").[2]

Herrell argues that he "never received [a] written notice that he was not to be recommended to the Board of Regents for his degree" and such a refusal constitutes a violation of due process. (DE 10, at 7–8). Essentially, Herrell attempts to create a constitutionally significant distinction between the disciplinary process and the decision made by Dr. Benson not to recommend him for conferral of a degree to the Board of Regents. This theory is unavailing in several respects. First, even if Kentucky law did establish a separate procedure to challenge the decision of a university and EKU failed to follow it, that in and of itself would not constitute a violation of due process. State law may establish one's entitlement to a property right, but it does not define the parameters of what is or is not a constitutional violation. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 570 (6th Cir. 2011); *Cummins*, 662 F. App'x at 445 n. 2.

Better understood, however, Herrell's argument stretches the protection offered by procedural due process too far. What process is due is more malleable a concept than his theory credits. In arguing that that he received no process with regard to the University's decision to withhold his degree, Herrell ignores the fact that, as he himself says, "the disciplinary hearing and the failure to recommend are clearly intertwined." (DE 10, at 7).

---

[2] To the extent Herrell's claim from Count I survives a mootness challenge, it too is waived for the same reasons offered above.

9

Indeed, even Herrell admits that "[t]he imposed disciplinary sanctions led to the denial of the recommendation of the degree to the Board of [Regents]." (DE 10, at 7). Therefore, it is simply not the case that Herrell "had no way to contest the decision . . . ." (DE 10, at 7). To start, Herrell's original complaint filed in state court directly acknowledged the he knew his degree was on the line in the disciplinary process. (*See* DE 1-1, Compl. ¶ 23) ("To continue the process which could end in [EKU] denying [Herrell] a rightfully earned degree would violate [his] rights under the State and Federal Constitution."). Specifically, EKU's policy provided Herrell with the opportunity to challenge all of the factual allegations against him and, more to the point, afforded him the opportunity to attend the sanctions hearing and to appeal any sanction rendered. (See DE 6-3, Response to Non-Discrimination and Harassment regulation).[3]

Sure, the decision not to confer his degree came after Herrell was expelled. But aside from the delay in time, the Court fails to see any meaningful distinction between the disciplinary process—the process Herrell received—and the decision not to confer—the process Herrell wants. The latter is just the fall-out from the process in which he chose not to participate. This is not a situation where EKU irrationally decided to hold Herrell's degree for no reason. Such a situation would perhaps demand additional protection because presumably a disciplinary process would not have been initiated. *See Garcia*, 782 F.3d at 741 ("[T]he Due Process Clause is flexible and calls for such procedural protections as the particular situation demands."). In this case, Herrell received all the process he was due because the disciplinary process and the non-conferral are inextricably linked for the purposes of a due process challenge. Herrell did not avail himself of the opportunity to challenge the very sanction that resulted in the non-conferral of his degree. Just as ballplayer

---

[3] That same policy also provided further notice that EKU would place a hold on a degree when disciplinary proceedings were pending. (DE 6-3, Response to Non-Discrimination and Harassment regulation).

who watches three strikes go over the plate does not get an additional fourth strike before striking out, Herrell cannot make out a claim for a due process violation by requiring that EKU provide an additional protection to the disciplinary process while at the same time overlooking the fact that he chose to watch the very process that led to the decision not to confer his degree go by unchallenged.

Accordingly, Herrell does not state a viable claim for the denial of procedural due process. Because Herrell has not succeeded on the merits of his procedural due process claim, the Court will not address the three additional factors to establish the need for a permanent injunction. In the final analysis, therefore, the Court will not order EKU's President Dr. Benson to recommend that Herrell receive his degree.

### III. CONCLUSION

For the reasons previously explained, Herrell has failed to state a claim upon which relief can be granted. His claims are either moot or fail as a matter of law. **IT IS HEREBY ORDERED** that the defendants' motion to dismiss (DE 6) is **GRANTED** and that Herrell's amended complaint (DE 1-7) is **DISMISSED**. The Clerk of Court **SHALL STRIKE** this case from the Court's active docket. A separate judgment will issue.

Dated June 12, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY